FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 24 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
DR. GERALD FINKEL, as Chairman of the
Joint Industry Board of the Electrical Industry,

                Plaintiff,

- against -

AMPUL ELECTRIC, INC.,

                Defendant.
------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

10 CV 3519 (ENV)

On August 2, 2010, plaintiff Gerald Finkel brought this action against defendant Ampul Electric, Inc. (the "Company"), alleging violations of Sections 404, 409, 502, and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1104, 1109, 1132, and 1145, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Despite proper service of the Complaint, defendant has not answered or otherwise appeared in this action. On October 26, 2010, plaintiff filed a motion for default judgment, and on the same day, the Clerk of Court entered a notation of default. On November 1, 2010, the Honorable Eric N. Vitaliano denied plaintiff's motion for default judgment without prejudice "for failure to certify that service was accomplished as required by this Court's Individual Motion Practice and Rules." (November 1, 2010 Order[1] at 1).

Plaintiff re-filed their motion for a default judgment on November 3, 2010, with an accompanying memorandum of law and affidavits. On January 26, 2011, Judge Vitaliano

---

[1] Decision and Order, dated November 1, 2010.

referred the matter to the undersigned for a determination with respect to damages.

For the reasons set forth below, the Court respectfully recommends that damages be awarded in the amount of $215,312.84.

BACKGROUND

Plaintiff is the Chairman of the Joint Industry Board of the Electrical Industry (the "Board"). In this capacity, plaintiff serves as the administrator of employee benefit plans "established and maintained pursuant to collective bargaining agreements between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the 'Union'), . . . employer associations and independent or unaffiliated employers in the electrical, elevator, sign, television, burglar alarm and other related industries." (Compl.[2] ¶ 4). These plans include the Pension, Hospitalization and Benefit Plan of the Electrical Industry (the "PHBP"), the Dental Benefit Fund of the Electrical Industry ("DEN"), the Deferred Salary Plan of the Electrical Industry ("401(k) Plan"),[3] the Educational and Cultural Trust Fund of the Electrical Industry ("E&C"), the Annuity Plan of the Electrical Industry ("ANN"), the Vacation-Holiday Unemployment Plan of the Electrical Industry ("VHUI"), the Health Reimbursement Account Plan of the Electrical Industry ("HRAP"), and the National Employees Benefit Fund ("NEBF") (collectively, the "ERISA Plans"). (Id. ¶ 5).

Defendant Ampul Electric, Inc. is a New York corporation with its principal place of business in White Plains, New York. (Id. ¶ 10). Ampul is a member of the New York Electrical

---

[2] "Compl." refers to the Complaint, which was filed on July 30, 2010.

[3] The Complaint states that the Deferred Salary Plan of the Electrical Industry is a tax-qualified, profit-sharing 401(k) plan.

2

Contractors Association, Inc. (the "Association"), which has been designated by its members as the collective bargaining representative for the purpose of negotiating with the Union. (Id. ¶¶ 11-12). Pursuant to two collective bargaining agreements ("CBAs") between the Association and the Union – the 2005[4] and 2008[5] CBAs – Association members, including the Company, are required to remit contributions to the ERISA Plans according to specified rates for any employee who performs work covered by the CBAs. (Id. ¶¶ 13-14).

Plaintiff alleges that the Board also collects contributions for the Electrical Employers Self Insurance Safety Plan ("EESISP"), the Benefit and Wage Delinquency Fund ("Delinquency Fund"), the COPE Fund ("COPE"), and the Joint Board Operations Fund ("JT Board") (collectively, the "Non-ERISA Plans"). (Id. ¶ 7). Plaintiff refers to the contributions owed to the ERISA and Non-ERISA Plans, excluding those owed to 401(k) Plan, collectively as "JIB Contributions." (Id.) Furthermore, plaintiff refers to the total combined contributions owed to all of the plans, including the 401(k) Plan, as "Required Contributions." (Id.) The Company is also required to submit weekly 401(k) Plan Contributions and 401(k) Plan Reports to the Mercer Trust Company, the Board's designated 401(k) investment manager.[6] (Id. ¶ 17).

As Administrator, the Board has established delinquent contribution policies that mandate

---

[4] The "2005 CBA" was operative from May 12, 2005 to May 7, 2008. (Compl. ¶ 13).

[5] The "2008 CBA" was operative as of May 8, 2008 and is scheduled to remain in effect until April 24, 2013. (Compl. ¶ 13).

[6] Plaintiff asserts that the CBAs and Trust Agreements are agreements within the meaning of Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§1132(a)(3) and 1145, and Section 301(a) of the LMRA, 29 U.S.C. §185(a). (Compl. ¶ 18). Moreover, the CBAs and Trust Agreements of the ERISA Plans are plan documents incorporated within Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§1132(a)(3) and 1145. (Id.)

the assessment of interest on late-paid contributions that are due and owing to the ERISA Plans, based on interest rates established by the ERISA Plans or pursuant to 26 U.S.C. § 6621. The Board also collects contributions due and owing to the Non-ERISA Plans, at the rates established by the Non-ERISA Plans or in accordance with 26 U.S.C. § 6621. (Id. ¶¶ 19-20).

Plaintiff alleges that defendant failed to pay the JIB Contributions for the weeks ending April 7, 2010 through July 21, 2010. However, because defendant failed to submit the required weekly payroll reports, the Joint Board is unable to ascertain the exact amount of JIB Contributions owed for the weeks ending June 2, 2010 through July 21, 2010. (Id. ¶¶ 21-23). According to plaintiff, defendant also failed to remit the 401(k) Plan Contributions for the weeks ending December 2, 2009 and December 31, 2009. (Id. ¶ 24). In addition, since defendant failed to submit certain 401(k) Plan Reports, the Joint Board is also unable to ascertain the exact amount of 401(k) Plan Contributions owed for the weeks ending March 31, 2010 through July 21, 2010. (Id. ¶ 25). Plaintiff further seeks Required Contributions owed to all Plans due under the 2008 CBA that accrue between the date the Complaint was filed and the date of judgment. (Id. ¶ 26).

Plaintiff claims that despite the Board's letter dated May 10, 2010, demanding payment of $11,258.91 in interest, defendant still owes interest on late-paid JIB Contributions for the period of weeks ending January 23, 2008, April 2, 2008, April 30, 2009, May 14, 2008 through May 28, 2008, July 30, 2008 through August 13, 2009, August 27, 2008 through April 15, 2009, April 29, 2009 through July 15, 2009, July 29, 2009 through August 19, 2009, September 2, 2009 through October 28, 2009, and November 11, 2009 through February 3, 2010. (Id. ¶¶ 27-28). Plaintiff further alleges that because defendant has paid late for more weeks than are noted

4

in the May 10, 2010 letter, defendant owes additional interest on all such late-paid JIB Contributions. (Id. ¶ 29). Finally, plaintiff claims that defendant "remains obligated to pay Required Contributions to all Plans due under the CBAs that will accrue between the date this Complaint is filed and the date judgment is entered." (Id. ¶ 31).

DISCUSSION

I. Default Judgment

A. Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default. Rule 55 sets forth a two-step process for an entry of default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of the Court automatically enters the default pursuant to Rule 55(a) by notation of the party's default on the clerk's record of the case. See id. Second, after the Clerk of the Court enters default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter default judgment. See Fed. R. Civ. P. 55(b).

Where the amount of damages owed requires a judicial finding, a default judgment may be entered once the court has conducted a hearing or made a determination as to damages. See Fed. R. Civ. P. 55(b). That said, while "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Services, Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (citing

5

Transportes Aereos De Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985)), aff'd, 873 F.2d 38 (2d Cir. 1989).

In determining whether a default judgment should be entered, the Second Circuit has cautioned that a default judgment is an extreme remedy that "must remain a weapon of last, rather than first, resort." Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. Furthermore, "[Rule 55(b)] states that a judgment by default 'may' be entered under specified circumstances, not that it must." Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (ordering an inquest to determine damages and stating that where court enters a default judgment it is required to "supervise [that entry] . . . with extreme care to avoid [a] miscarriage[] of justice"). Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because the defendants are in default. Id.

The court has significant discretion and may consider a number of factors in deciding whether to grant a default judgment. These factors include "'the amount of money potentially involved' (citation omitted)[,] . . . 'whether the grounds for default are clearly established,'" Hirsch v. Innovation Int'l, Inc., No. 91 Civ. 4120, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (quoting Charles A. Wright, et al., 10 Fed. Practice and Procedure: § 2685, at 425-26 (2d ed. 1983)), and whether the claims were adequately pleaded in the Complaint thereby placing the

defendant on notice. See Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"). Additionally, a court may consider whether the facts alleged in the complaint state a valid cause of action, whether there are unresolved questions regarding material issues of fact as to liability or damages, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (discussing factors); Charles A. Wright, et al., 10A Fed. Practice & Procedure, §§ 2685, 2688 (3d ed. 1998).

B. Entry of Default Judgment

In this case, it is beyond dispute that the defendant is in default since the defendant failed to file an Answer to the Complaint, failed to oppose plaintiff's motion for a default judgment, and failed to challenge the Court's entry of a default. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion"). Moreover, defendant has declined to obtain counsel which constitutes a failure to defend because defendant, a corporation, cannot proceed pro se in federal court. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only).

Given the numerous opportunities afforded defendant, and its apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay further. Accordingly, the Court respectfully recommends that plaintiff's motion for a default judgment be

7

granted.

When a defendant defaults, the defendant is deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages." See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986). The Court, however, must review the allegations in the complaint to determine if the elements of each claim have been adequately pleaded. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.

1. Liability for ERISA Claims

The facts alleged in the Complaint are adequate to state claims under Section 515 of ERISA. Section 515 provides as follows: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Plaintiff contends that while the defendant is bound by the terms of the CBAs and obligated to remit contributions as prescribed therein, it has failed to do so. (Compl. ¶¶ 13-14). It follows, therefore, that defendant is liable for plaintiff's Section 515 ERISA claim.

The Complaint also alleges that defendant is a fiduciary within the meaning of Section 404 and consequently bound by the duties enumerated in Section 409 of ERISA. (Compl. ¶ 40). Section 409 provides that:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of

8

the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109. ERISA provides that a "person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or control respecting management or disposition of its assets . . . or he has any discretionary authority or discretionary responsibility in the administration of such a plan." 29 U.S.C. § 1002(21)(A). "As the Second Circuit has recognized, Congress intended ERISA's definition of fiduciary 'to be broadly construed.'" Finkel v. Union Elevator Corp., No. 07 CV 2227, 2011 WL 1655573, at *2 (E.D.N.Y. May 2, 2011) (quoting Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir. 1987)).

Defendant was required to remit deferred salary contributions to the 401(k) Plan, and therefore "had the requisite authority and control over unremitted funds to qualify as an ERISA fiduciary." Id. at *4. By allegedly failing to remit deferred salary contributions to the 401(k) Plan, defendant breached its fiduciary duty, directly and proximately resulting in a loss to the 401(k) Plan. Having breached its fiduciary duty and caused a loss to plaintiff, defendant is liable to plaintiff under Section 409 of ERISA.

2. Liability for LMRA Claim

Plaintiff's allegations are also sufficient to state a cause of action for breach of contract under Section 301 of the LMRA. Section 301(a) provides the following: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties. . . ." 29 U.S.C. § 185(a). The defendant's failure to remit contributions to the Plans is a breach of the CBAs and thus actionable under Section 301 of the

9

LMRA. See Brown v. C. Volante Corp., 194 F.3d 351, 354 (2d Cir. 1999).

II.     Damages

   A. Legal Standard

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. The burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Defendants who default are entitled to discovery regarding unliquidated damages. See Securities & Exch. Comm'n v. Wang, No. 88 CV 4461, 1989 WL 135558, at *1 (S.D.N.Y. May 22, 1989); Clague v. Bednarski, 105 F.R.D. 552, 552 (E.D.N.Y. 1985). When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:

> [t]he court may conduct hearings . . . when, to enter or effectuate a judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2).

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan. See 29 U.S.C. § 1132(g)(2). These damages include:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law)

10

> of the amount determined by the court under subparagraph
> (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by
> the defendant, and
> (E) such other legal or equitable relief as the court deems
> appropriate.

Id.; see also Iron Workers Dist. Council of Western New York and Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1505-07 (2d Cir. 1995).

### B. Monetary Damages

In this case, where the plaintiffs have filed detailed affidavits and exhibits pertaining to the damages incurred, and where the defendant has failed to make an appearance, the Court can make an informed recommendation regarding damages without an evidentiary hearing.[7]

#### 1. Unpaid Contributions

A review of the exhibits and supporting materials submitted by plaintiff reveals that defendant owes delinquent contributions in the amount of $174,166.17. (Adler Supp. Decl.[8] ¶ 42).

According to plaintiff's detailed submissions, contributions are owed to the various

---

[7] The Court notes that it offered defendant an opportunity to submit documentation to help confirm the accuracy of plaintiff's claims for damages. (See April 4, 2011 Order at 1). Defendant failed to avail itself of this opportunity. Here, plaintiff's submissions are sufficiently detailed such that a formal inquest is unnecessary. See Fustok v. Conticommodity Services, Inc., 122 F.R.D. at 156 (citing Transportes Aereos De Angola v. Jet Traders Inv. Corp., 624 F. Supp. at 266). Accordingly, the Court has based its recommendations on a thorough review of plaintiff's submissions.

[8] Citations to "Adler Supp. Decl." refers to the Supplemental Declaration of Michael S. Adler In Support Of Plaintiff's Motion For A Default Judgment, dated March 23, 2011.

Plans[9] as follows:

| Plans | Contributions Owed |
|---|---|
| PHBP | $62,522.10 |
| DEN | $5,349.38 |
| ANN | $19,164.75 |
| E&C | $929.33 |
| VHUI | $209.07 |
| NEBF | $439.01 |
| JT Board | $2,590.38 |
| Dues | $1,759.60 |
| COPE | $69.69 |
| Delinquency Fund | $440.03 |
| EESISP | $880.03 |
| **Total JIB Contributions Owed = $99,193.24** | |
| 401(k) | $74,972.93 |
| **Total Required Contributions Owed = $174,166.17** | |

Therefore, based on the Court's independent review of the record and the supporting documentation, the Court finds plaintiff's calculations to be accurate and respectfully recommends that plaintiff be awarded damages in the amount of $174,166.17.

2. Interest

Under ERISA and the CBAs, plaintiffs are also entitled to an award of: 1) interest accrued during the period of the delinquency; 2) interest accrued from the date of the commencement of the

---

[9]It appears that plaintiff is not claiming that defendant failed to make required contributions to HRAP. (See Adler Supp. Decl. ¶ 10).

action through the date of judgment; and 3) interest from the date of judgment until the entire amount is paid. See 29 U.S.C. §§ 1132(a)(9), (g)(2)(B).

Under Section 1132(g)(2) of ERISA, the interest rate is calculated "using the rate provided for under the plan, or, if none, the rate prescribed under Section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). In this case, the only benefit plan that provides for a specific interest rate is the NEBF, which calls for an annual rate of 10%, compounded monthly during the period of delinquency. (Sessa Decl.[10] ¶ 29, Ex. J at 11 § 6.9.3). For all other plans, the CBA adopts the default interest rate as established by Section 6621. (Sessa Decl. ¶ 29).

According to plaintiff's submissions, defendant owes interest on the following unpaid Required Contributions as follows:

| Plans | Interest Owed On Unpaid Contributions |
|---|---|
| PHBP | $2,190.55 |
| DEN | $187.37 |
| ANN | $672.09 |
| E&C | $33.50 |
| VHUI | $7.33 |
| NEBF | $500.18 |
| JT Board | $89.78 |
| Dues | $61.63 |
| COPE | $2.44 |
| Delinquency Fund | $15.41 |
| EESISP | $30.82 |
| 401(k) | $2,698.27 |
| **Total Interest Owed On Unpaid Contributions = $6,489.37** | |

---

[10] "Sessa Decl." refers to the Declaration of Christina A. Sessa In Support of Plaintiff's Motion For Default Judgment, dated October 25, 2010.

In addition to the interest owed for the unpaid contributions, plaintiff alleges that defendant owes a total of $11,736.90 in interest for late-paid contributions.[11] (Adler Supp. Decl. ¶ 14). Having reviewed plaintiff's calculations, the Court respectfully recommends that plaintiffs be awarded a total amount of $18,226.27 in interest for the unpaid and late-paid contributions, plus the interest that will accrue from the date of this Report and Recommendation until the entry of judgment, together with post-judgment interest pursuant to 28 U.S.C. § 1961.

### 3. Liquidated Damages

Plaintiffs also request an award of liquidated damages for unpaid contributions. Pursuant to the 2008 CBA and ERISA, plaintiffs are entitled to liquidated damages for unpaid contributions. See 29 U.S.C. § 1132(g)(2)(c) (providing for an award of liquidated damages not to exceed 20% of the unpaid contributions). In this case, the 2008 CBA provides for liquidated damages in the amount of 20% of the unpaid contributions to the PHPB and NEBF plans. (Adler Supp. Decl. ¶ 42). Plaintiff also seeks additional liquidated damages in the amount equal to the interest due on the unpaid contributions to the DEN, ANN, VHUI, E&C, and 401(k) plans.

Based upon defendant's failure to remit the requisite contributions to the ERISA Plans for the relevant period, the Court determines that defendant owes a total of $16,190.78 in liquidated damages. This figure represents 20% of the unpaid contributions to the PHPB and NEBF plans, plus the amount equal to the interest due on the unpaid contributions to the DEN, ANN, VHUI, E&C, and 401(k) plans.

---

[11] While plaintiff does not provide the Court with a plan-specific breakdown of the interest owed for the late-paid contributions, the Court is satisfied with the accuracy of the plaintiff's calculations. Accordingly, defendant owes $11,437.78 in interest for the late-paid JIB Contributions and $299.12 in interest for the late-paid 401(k) contributions.

14

Accordingly, the Court respectfully recommends that the Funds receive an award of liquidated damages in the total amount of $16,190.78.

### 4. Attorney's Fees and Costs

Pursuant to 29 U.S.C. § 1132(g)(2)(D), plaintiffs also requests reasonable attorney's fees and costs incurred in connection with this action. Plaintiff seeks a combined total of attorney's fees and costs in the amount of $6,729.62, representing services performed by plaintiff's counsel in connection with plaintiff's efforts to obtain this judgment as of March 23, 2011. (Adler Supp. Decl. ¶ 42).

#### a. Reasonable Attorney's Fees

When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d 182, 183-84 (2d Cir. 2008). To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. Id. In Arbor Hill, the Second Circuit adopted the following factors to guide the court's inquiry as to what constitutes a reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12)

15

awrds in similar cases . . . .

Id. at 187 n.3 (citation omitted). A number of courts within the Second Circuit have applied these factors when awarding attorney's fees. See Manzo v. Sovereign Motor Cars, Ltd., No. 08 CV 1229, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Lochren v. County of Suffolk, No. 01 CV 3925, 2008 WL 2039458, at *2 (E.D.N.Y. May 9, 2008); see also Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008). Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . ., the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . ., and other returns (such as reputation, etc.) the attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184; see also Heng Chan v. Sung Yue Tang Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007). In awarding attorney's fees, the Court is guided by the fact that default actions are relatively simple legal matters, while taking into account the attorney's degree of skill and the Court's own experience dealing with similar claims.

The next step in awarding attorney's fees is determining the reasonableness of the hours expended by counsel. See, e.g., LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007). The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary. See, e.g., LaBarbera v.

16

Frank J. Batchelder Transp. LLC, No. 08 CV 3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing Gierlinger v. Gleason,160 F.3d 858, 876 (2d Cir. 1998)); Bourgal v. Atlas Transit Mix, No. 93 CV 0569, 1996 WL 75290, at *7 (E.D.N.Y. Feb. 7, 1996).

In this case, plaintiffs were represented by Cohen, Weiss and Simon LLP (the "Firm"), which is located at 330 West 42nd Street New York, New York, N.Y. 10036. In accordance with N.Y. State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), the Firm submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, along with the name of the attorney and a description of services performed. (Adler Supp. Decl., Ex. C).

The requested attorney's fees total $5,888.00, with the time billed at the following rates: 1) between $225.00 and $250.00 per hour for legal work performed by Michael S. Adler, Esq., an associate; 2) $275 per hour for legal work performed by James R. Grisi, a partner; and 3) between $80.00 and $90.00 per hour for work performed by a legal assistant at the Firm. (Id.).

Based on the Court's knowledge of the rates generally charged in this district for this type of work in connection with an ERISA default, the Court finds that the rates of $250.00 per hour for the legal work performed by Mr. Adler and $275 per hour for work performed by Mr. Grisi are within the range of billing rates of similarly experienced attorneys in this district working on comparable matters. See, e.g., Trustees of the Local 807 Labor Mgmt. Health Fund v. Express Haulage Co., No. 07 CV 4211, 2008 WL 4693533, at *10 (E.D.N.Y. Oct. 23, 2008) (approving rates of $270 and $235 for a senior associate in an ERISA case); LaBarbera v. Cyn-Ken Driver Serv. Co., Inc., No. 06 CV 4446, 2007 WL 2908072, at *10 (E.D.N.Y. Oct. 5, 2007) (awarding

17

fees to partners at the rates of $340 and $300 per hour, and awarding fees to associates at the rate of $250 per hour).[12]

Accordingly, the Court respectfully recommends that the requested rate of $250.00 per hour for Mr. Adler's time be approved.

With regard to the rate charged for paralegal work, the Court respectfully recommends that the requested rate of $90.00 per hour be approved as reasonable and appropriate. See, e.g., King v. Unique Rigging Corp., No 01 Civ. 03797, 2006 WL 3335011 (E.D.N.Y. Oct. 27, 2006) (finding that $90 per hour for paralegal was "within the reasonable range for ERISA cases in this district").

Having determined that the rates charged in this case are reasonable, the Court now turns to the reasonableness of the number of hours billed in this matter. As previously discussed, the number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary. See, e.g., LaBarbera v. Frank J. Batchelder Transp., 2009 WL 240521, at *4. If the number of hours billed is determined to be unreasonable, the court may exclude that portion of hours it finds to be excessive or unreasonable in its attorney's fees calculations. See id.

Based on the contemporaneous billing records submitted to the Court, the Firm seeks compensation for a total of 37.5 hours of work on this matter from July 26, 2010, to March 23,

---

[12]The Court notes that lower hourly rates have also been approved for ERISA cases in this district. See, e.g., Finkel v. Jones Lang LaSalle Americas, Inc., No. 08 CV 2333, 2009 WL 5172869, at *5 (E.D.N.Y. Dec. 30, 2009) (finding that hourly rates of $235.00 for senior associates and $225.00 for junior associates were reasonable); Finkel v. Rico Electric, Inc., No. 05 CV 2145, 2009 WL 3367057, at *11 (E.D.N.Y. Oct. 16, 2009) (awarding attorneys with five years of employee benefits experience at the rate of $225 per hour in a similar ERISA inquest). Having reviewed plaintiff's fee application and the overall reasonableness of the request, the Court recommends applying a rate at the higher end of the range as appropriate.

2011. The Firm's work on this case included drafting the Complaint, drafting plaintiff's Motion for a Default Judgment and the materials annexed thereto, and preparing supplemental declarations updating the damages sought. Having carefully examined the billing records, the Court finds that the number of hours charged in this matter is reasonable given the amount of work performed and the fact that the case involves a relatively straightforward ERISA claim.

Accordingly, based on the hourly rates set forth above, and the number of hours billed on this matter, the Court respectfully recommends that plaintiffs be awarded $5,888.00 in attorney's fees.

### b. Reasonable Costs

Plaintiffs also request $841.62 in costs for filing, service of process, postage, photocopies, local ground transportation, and computer research. (Adler Supp. Decl. ¶ 29). Under Section 502(g)(2)(D) of ERISA, plaintiffs are entitled to recover reasonable costs. See 29 U.S.C. § 1132(g)(2)(D). Accordingly, based on a review of the record, the Court finds the requested costs to be reasonable, and respectfully recommends that plaintiff be awarded $841.62 in costs. See Finkel v. Triple A Group, Inc., 2010 WL 1688359, at *9 (awarding $818.53 in costs for filing fees, service, postage, and photocopying).

## CONCLUSION

In summary, the Court respectfully recommends that plaintiff's motion for a default judgement be granted and that plaintiff be awarded the following damages from defendant: 1) $174,166.17 in unpaid contributions to the Funds; 2) $18,226.27 in interest on the unpaid and late-paid contributions; 3) $16,190.78 in liquidated damages; 4) $5,888.00 in attorney's fees; and

5) $841.62 in costs, for a total award of $215,312.84, plus any additional interest that accrues from the date of this Report and Recommendation until the entry of judgment, together with post-judgment interest pursuant to 28 U.S.C. § 1961.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail. Plaintiff is directed to serve a copy of this Report and Recommendation on defendant by mail. By September 2, 2011, plaintiff shall an affidavit attesting that such service has been attempted.

**SO ORDERED.**

Dated: Brooklyn, New York
August 23, 2011

Cheryl L. Pollak
United States Magistrate Judge